IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WEAVER BROS. INSURANCE
ASSOCIATES, INC.,

                Plaintiff,

    v.

JACQUELINE BRAUNSTEIN, et al.,

                Defendants.

CIVIL ACTION
NO. 11-5407

## OPINION

**Slomsky, J.**                                                      **March 25, 2013**

### TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND ......................................................................................................... 2

    A.   Statement Of Facts .......................................................................................... 2

    B.   Provisions Of The Certificate Of Group Insurance .................................... 5

    C.   Procedural History .......................................................................................... 9

III.   STANDARD OF REVIEW ....................................................................................... 9

IV.   ANALYSIS ................................................................................................................ 10

    A.   Weaver Bros. Is A Fiduciary Under ERISA .......................................... 10

    B.   Braunstein Beneficiaries Have Sufficiently Pled That Weaver Bros. Breached

        Its Fiduciary Duty To Deborah Braunstein ............................................ 11

        1.   Weaver Bros. Provided An Inadequate Summary Plan Description ............ 11

2.   The Certificate Of Group Insurance Is Not Part Of The Summary Plan Description ................................................................................... 14

3.   The Certificate Of Group Insurance Does Not Clearly And Simply Describe The Conversion Right ................................................................ 16

4.   Weaver Bros. Made Material Misrepresentations To Deborah Braunstein . 18

C.   Braunstein Beneficiaries May Seek "Appropriate Equitable Relief" Under 29 U.S.C. § 1132(a)(3)(B) ................................................................... 25

D.   Braunstein Beneficiaries Are Entitled To Relief In Their Individual Capacities..... 27

E.   Negligence Claim Is Preempted............................................................ 28

V.   CONCLUSION ............................................................................. 28

## I.    INTRODUCTION

Under the Employee Retirement Income Security Act of 1974 ("ERISA"), a "plan administrator" has a fiduciary duty to provide a summary of the rights and benefits offered to plan participants.  The summary is referred to as a "summary plan description" ("SPD").  In this case, the benefit made available was life insurance.  Deborah Braunstein, the plan participant, was covered by a life insurance plan provided as a benefit by her employer, Weaver Bros. Insurance Associates, Inc. ("Weaver Bros.").  The employer was the administrator of the plan, which provided that upon death of the insured, a sum of money would be paid to designated beneficiaries.

In October 2009, Deborah Braunstein was diagnosed with cancer.  After the diagnosis, she stopped working full-time and began collecting disability payments from Weaver Bros.  She asked a Weaver Bros. employee if her life insurance benefits would continue after she began collecting disability payments.  The employee told her that her benefits would continue as though she was an active employee.  Later, Weaver Bros. faxed paperwork to her, requesting that she update her life insurance beneficiaries.  She filled out the forms and asked Weaver Bros. to look over the documents and make sure that she included all the necessary information.  Weaver Bros. did not inform her that she needed to make any changes to her submitted paperwork.

Deborah Braunstein died in January 2011.  When her beneficiaries filed a claim for benefits under the life insurance plan, their claim was denied.  Unbeknownst to Deborah Braunstein, her policy lapsed one year after she stopped "active work," or on October 10, 2010. Although she had the right to continue her benefits by converting her policy to an individual policy within thirty-one days after her policy lapsed, she did not exercise this right.  Her beneficiaries blame Weaver Bros. for not informing her of the conversion right, and claim that

Weaver Bros. breached its fiduciary duty to Deborah Braunstein under ERISA by: (1) providing an inadequate "summary plan description" of her rights under the life insurance plan; and (2) misleading Deborah Braunstein by informing her that her life insurance plan would not lapse during her period of disability.

In response to the beneficiaries' allegations, Weaver Bros. filed this action under the Declaratory Judgment Act, asking this Court to interpret the life insurance plan documents, find that Weaver Bros. did not have a duty to inform Deborah Braunstein about her conversion right, and hold that coverage under the life insurance plan lapsed. Deborah Braunstein's beneficiaries filed a counterclaim for breach of fiduciary duty and negligence, and request that the Court award the equitable remedy of "surcharge"[1] to cover the loss of life insurance benefits resulting from Weaver Bros.' alleged violation of ERISA. Weaver Bros. has moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). For reasons that follow, the Court will grant in part and deny in part the Motion.

## II.    BACKGROUND

### A.    Statement Of Facts

In 2009, Deborah Braunstein was diagnosed with cancer. At that time, she was a Commercial Liaison Senior Account Manager at Weaver Bros., where she had worked since October 2, 2006. (Doc. No. 50 at 9.) On October 11, 2009, at age sixty-one, she took a medical leave of absence in order to undergo intense chemotherapy to treat her cancer.[2] (Id.) As an employee of Weaver Bros., she was covered by two group life insurance policies (hereafter the

---

[1] A "surcharge" is "[t]he amount that a court may charge a fiduciary that has breached its duty." Black's Law Dictionary 1579 (9th ed. 2009).

[2] Weaver Bros. contends that Deborah Braunstein's last full day of work was October 15, 2009, but does not contest the date of October 11, 2009. The difference in date is not germane to the disposition of this Motion. (Doc. No. 50 at 9.)

"Life Insurance Plan" or "Plan") administered by Fortis Benefits Insurance Company ("Fortis").[3] The Plan is subject to the provisions of ERISA.

On October 30, 2009, after a two-week waiting period from the date she was no longer an active employee, Deborah Braunstein began to receive benefits under Weaver Bros.' short-term disability plan. (Doc. No. 1 at 9.) She then inquired about the status of her life insurance benefits, and Weaver Bros. informed her that her life insurance would be maintained during her disability as though she was an active employee. (Doc. No. 44 at 9–10.) Although she continued to work part-time during her leave of absence until about January 14, 2010, her condition deteriorated and she became permanently disabled. (Doc. No. 1 at 10.) She therefore began collecting long-term disability benefits from Weaver Bros. (Id.)

---

[3] Fortis Benefits Insurance Company is now known as Union Security Insurance Company. (Doc. No. 23 at 1 n.1.) Union Security Insurance Company operates under the trade name Assurant Employee Benefits. The entity now known as Union Security Insurance Company will be referred to in this Opinion as "Fortis."

Fortis is the Claims Administrator under the Plan, and had "the sole discretionary authority to determine eligibility for participation or benefits and to interpret the terms of the Life Insurance Plan." (Doc. No. 43 at 2.) Weaver Bros. is the Plan Sponsor and Plan Administrator of the Plan. (Id.) Fortis and Weaver Bros. had different roles with respect to administration of the Plan, and had different fiduciary responsibilities.

> Under ERISA, the administrator is generally the plan sponsor, or the individual or entity named as the administrator in the plan. 29 U.S.C. § 1002(16)(A). Most often, the plan sponsor retains the title of plan administrator, but delegates claim administrative functions to an insurance company or third-party administrator that is responsible for determining the claimant's eligibility for disability benefits. Regardless of who makes the benefit determination, when exercising discretionary authority to determine eligibility for disability benefits, that individual or entity is acting as a fiduciary. Id. § 1002(21)(A).

Terrence D. Brown, ERISA Disability Claims in the Eighth Circuit, 57 Drake L. Rev. 51, 58 n.30 (2008).

On February 16, 2010, Weaver Bros. faxed a form to Deborah Braunstein requesting that she update her life insurance beneficiary designations.  (Doc. No. 44 at 10.)  The beneficiary designation form read in part:

| PRIMARY BENEFICIARY (IES) | All beneficiaries in this section will be considered primary. Proceeds will be paid in equal shares to primary beneficiaries who survive you unless you indicate percentages. Percentages must equal 100%. |
| --- | --- |

(Id.)  Weaver Bros. explained on the cover sheet sent with the blank form that it was updating the beneficiary designations for all employees' life insurance plans.  (Id.)  On March 8, 2010, Deborah Braunstein returned her completed beneficiary designation form to Weaver Bros., noting on the cover sheet that the form was intended to replace her previous designations.  (Id.) She also asked Weaver Bros. to "look [the form] over to make sure [she] included the necessary information."  (Id.)  Weaver Bros. did not inform her that any changes were needed.  (Id.)  She designated as beneficiaries her children, Jacqueline and Micah Braunstein, and her grandchildren, Isaiah Jones and Tayler Mayne (collectively "the Braunstein Beneficiaries").

On January 21, 2011, Deborah Braunstein passed away.  (Doc. No. 1 at 10.)  The Braunstein Beneficiaries submitted a timely claim for benefits to Fortis, the Claims Administrator.  (Doc. No. 50 at 9.)  On June 3, 2011, Fortis rejected their claim, informing them that Deborah Braunstein was not entitled to benefits under the Life Insurance Plan because her coverage had lapsed.  (Id. at 10.)  The Life Insurance Plan contained a provision that terminated her benefits one year after October 11, 2009, the day she ceased "active work" at Weaver Bros. Although she had the option for thirty-one days thereafter to convert her group Life Insurance Plan to an individual plan and maintain her life insurance benefits, she did not exercise the option because she was unaware of the need to do so.

On June 29, 2011, R. Scott Gardner, Esquire, prior counsel for the Braunstein Beneficiaries, sent a letter to Sandra J. Colangelo, an employee of Weaver Bros., asserting that the denial of benefits by Fortis was due to Weaver Bros.' failure to inform Deborah Braunstein of her right to convert the Life Insurance Plan to an individual policy. (Doc. No. 1 at 109–10.) The letter also alleged that this failure was a breach of fiduciary duty under ERISA. (Id.)

On August 26, 2011, in response to the letter, Weaver Bros. filed the instant lawsuit under the Declaratory Judgment Act, 28 U.S.C. § 2201, requesting a determination from the Court that Weaver Bros. did not have a duty to inform Deborah Braunstein about her conversion right and that her coverage under the Plan had lapsed. The Braunstein Beneficiaries filed a Counterclaim alleging: (1) breach of fiduciary and co-fiduciary duties under ERISA;[4] and (2) negligence. On May 7, 2012, Weaver Bros. filed a Second Motion for Judgment on the Pleadings. As noted previously, the Motion is now ripe for a decision.

### B. Provisions Of The Certificate Of Group Insurance

Deborah Braunstein's rights and benefits under the Life Insurance Plan are described in a lengthy policy document titled the "Certificate of Group Insurance."[5] The Certificate is twenty-

---

[4] Although the Braunstein Beneficiaries' Counterclaim clearly alleges a breach of fiduciary duty, the Counterclaim does not specify how Weaver Bros. breached a duty as a "co-fiduciary."

[5] As stated above, Deborah Braunstein had two life insurance policies: (1) a Fortis Voluntary Term Life Policy, Policy Number 4,040,343 (see Doc. No. 1 at 14–69); and (2) a Fortis Life Policy, Policy Number 52,654 (see id. at 70–107). There are two Certificates of Group Insurance and two SPDs, one for each policy. The Certificates and SPDs for each policy were distributed to plan participants in the same booklet. The booklet for each policy is attached to the Complaint. As Weaver Bros. stated in their moving brief, "[t]here are differences between the two life insurance policies that make up the Fortis ERISA Group Life Plans, but the key definitions and coverage provisions are substantially identical." (Doc. No. 50 at 12.)

The Certificate of Group Insurance for Policy Number 4,040,343 is thirty-seven pages (Doc. No. 1 at 24–60), while the Certificate for Policy Number 52,654 is twenty-three pages (Id. at 76–98). These pages do not include the nine pages that follow the SPD section in the booklet. In both

two pages, and has a table of contents with fourteen sections and thirty-eight subsections. The provisions relied on by Weaver Bros. in the Certificate of Group Insurance to prove that the Braunstein Beneficiaries are not entitled to coverage are found on pages 3, 4, 6, 7, 8, and 9.

The "**GENERAL DEFINITIONS**" section of the Certificate are on pages 3 and 4, and include, among other things, the following terms:

- *Active work* means the expenditure of time and energy for the *policyholder* or an *associated company* at your usual place of business on a *full-time* basis.
. . . .
- *Covered person* means an eligible employee or member of the *policyholder*, or an *associated company* who has become insured for a coverage.
. . . .
- *Policy* means the group policy issued by us to the *policyholder* that describes the benefits for which you may be eligible.
- *Policyholder* means the entity to whom the *policy* is issued.
. . . .
- We, us, and our mean Fortis Benefits Insurance Company.
- You and your mean an employee or member of the *policyholder* or an *associated company* who has met all the eligibility requirements for a coverage.

(Doc. No. 1 at 78–79 (emphasis in original).)

---

Certificates, as noted by Weaver Bros.' counsel, there are differences in wording, but they are insignificant and do not affect the outcome of the instant Motion.

For example, Policy Number 4,040,343 states "[t]he premiums for the Life Insurance plan are paid for entirely by you" (id. at 63), while in Policy Number 52,654 the comparable provision states "[t]he premiums for the Life Insurance plan are paid for by contributions from both you and the Plan Sponsor" (id. at 101). Another example is contained in Policy Number 4,040,343, in which the term "*Active Work*" is defined as "working *full-time* for the *policyholder* or an *associated company* at your usual place of business" (id. at 26), while in Policy Number 52,654 "*Active Work*" is defined as "the expenditure of time and energy for the *policyholder* or an *associated company* at your usual place of business on a *full-time* basis" (id. at 78). Other provisions quoted infra differ only in form, not substance. Therefore, for purposes of the Court's reasoning in this Opinion, both Certificates in their entirety are being considered, even if only one is discussed or quoted. In this regard, the Court will only refer to Policy Number 52,654 (Doc. No. 1 at 70–107).

The section entitled "**ELIGIBILITY AND TERMINATION PROVISIONS FOR YOU**" is found on page 6 and contains the following provision:

**When Your Insurance Ends**

Your insurance will end on the date:

- the *policy* ends;
- the *policy* is changed to end the insurance for your *eligible class*;
- you are no longer in an *eligible class*;
- you stop *active work*; or
- a required contribution was not paid.

(Id. at 81 (emphasis in original).)

Deborah Braunstein was a "*covered person*" until October 11, 2009, when she stopped "*active work*" at age sixty-one by taking a medical leave of absence from Weaver Bros. After she began collecting short-term disability benefits, she eventually became eligible for the following "**DISABILITY BENEFIT**," which is described on page 7 of the Certificate:

If you stop *active work* before age 65 because you become *disabled* and remain *disabled* for 6 months, your *life insurance* will continue for the period outlined in the "Maximum Benefit Period" provision. After 6 months of *disability*, no further premium is due for you while you remain *disabled*. We will refund premiums paid during your *disability*.

(Id. at 82.) The "**Maximum Benefit Period**" is found on page 8, and is described as follows:

If you become *disabled* before your 60th birthday, your insurance will continue as long as you are *disabled*, but not past age 65. If you become *disabled* on or after your 60th birthday, but before age 65, your insurance may continue for up to 1 year, but not past age 65.

Your insurance will continue even if the *policy* ends, if you meet the proof requirements while *life insurance* is in effect or within 6 months after it ends. If you are no longer *disabled*, your insurance will end unless you re-enter an *eligible class* and premium payments begin again.

> If your amount of insurance reduces or ends while you are *disabled*, you can apply for an individual policy. See the Conversion to an Individual Policy provision.[6]

(Id. at 83.)

Apparently, because Deborah Braunstein was sixty-one when she became disabled, her insurance continued for one year from October 11, 2009, the date on which she stopped active work due to her disability, to October 10, 2010. On October 10, 2010, her group insurance coverage ended, and Deborah Braunstein was eligible to apply for an individual policy. The "**Conversion to an Individual Policy**" section is on page 9, and states the following:

> If any or all of your group *life insurance* ends, you can apply for any individual policy offered by us (*conversion policy*). You must apply and pay the premium within 31 days. The individual policy may be any we offer for conversion. No *proof of insurability* is required. The amount of insurance available to you depends on the reason your insurance ends.
>
> If your insurance ends because you are no longer eligible or because of a change in age or other status, you may convert the full amount that ended.
>
> . . .
>
> If you die within 31 days after your *life insurance* ends, we will pay to your *beneficiary* the amount you could have converted, whether or not you applied or paid the premium.

(Id. at 84.)

Under the conversion provision, Deborah Braunstein had thirty-one days from October 10, 2010 — or until November 10, 2010 — to convert her group policy to an individual policy. Because she did not do so, her life insurance coverage lapsed on November 10, 2010.

---

[6] Although the terms of the Life Insurance Plan as set forth in the Certificate of Group Insurance may be understood by counsel or someone working with it on a frequent basis, it lacks the clarity necessary to assist a plan participant who will be making critical life decisions based on its terms. See infra Section (IV)(B)(3).

## C. Procedural History

This case has a complex procedural history involving multiple parties and crossclaims. In sum, on August 26, 2011, Weaver Bros. filed the Complaint (Doc. No. 1) against the Braunstein Beneficiaries under the Declaratory Judgment Act.[7]  Through December 12, 2012, numerous motions, answers, and memoranda were filed by the parties.  (Doc. Nos. 13, 16, 30, 44, 50, 53, 54, 57, 58, 65, 69, 72, 75, 78.)  On November 16, 2012, the Court heard oral argument on the instant motion.[8]

## III.  STANDARD OF REVIEW

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "A motion for judgment on the pleadings is a procedural hybrid of a motion to dismiss and a motion for summary judgment." Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc., 513 F. Supp. 2d 157, 162 (M.D. Pa. 2007).  "To succeed on a motion under Rule 12(c), 'the movant [must] clearly establish [ ] that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  Id. at 163 (quoting Hayes v. Cmty. Gen. Osteopathic Hosp., 940 F.2d 54, 56 (3d Cir. 1991)).

---

[7] The Complaint also named Time Insurance Company and Union Security Insurance Company as Defendants.  As stated supra, Union Security Insurance Company is the current name of Fortis Benefits Insurance Company.  (Doc. No. 23 at 1 n.1.)  Time Insurance Company is alleged in the Complaint to be an entity related to Fortis Benefits Insurance Company.  (Doc. No. 1 at 7.)  On November 21, 2011, the Braunstein Beneficiaries asserted crossclaims against Time Insurance Company and Union Security Insurance Company.  (Doc. No. 22.)  On June 20, 2012, both Time Insurance Company and Union Security Insurance Company were dismissed as parties to this lawsuit.  (Doc. No. 61.)  The only parties remaining in this litigation are Weaver Bros. and the Braunstein Beneficiaries.

[8] In deciding this Motion, the Court has considered the following:  Documents 50, 53, 57, 58, 65, 69, 72, 75, 78 filed on the docket, the arguments of counsel at the November 16, 2012 hearing, all pleadings, and all documents attached to the pleadings.

"When deciding a motion for judgment on the pleadings pursuant to [Federal Rule of Civil Procedure] 12(c), the Court applies the same standard as that on a motion to dismiss pursuant to Rule 12(b)(6)." Chirik v. TD BankNorth, N.A., No. 06-04866, 2008 WL 186213, at *5 (E.D. Pa. Jan. 15, 2008) (citing Turbe v. Gov't of the Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991)). "The Court must accept as true all well-pleaded allegations . . . and draw all reasonable inferences therefrom in favor of the nonmoving party."[9] Mobley v. Tarlini, 641 F. Supp. 2d 430, 437 (E.D. Pa. 2009) (citing Consol. Rail Corp. v. Portlight Inc., 188 F.3d 93, 94 (3d Cir. 1999)). "Similarly, as in a 12(b)(6) motion, the Court may look only to the facts alleged in the pleadings and any attachments." Id. "Exhibits attached to a pleading may be considered on a 12(c) motion, since under Rule 10(c), '[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.'" Id. (quoting Fed. R. Civ. P. 10(c)).

## IV. ANALYSIS

### A. Weaver Bros. Is A Fiduciary Under ERISA

The threshold issue in this case is whether Weaver Bros. is a fiduciary. One way to acquire fiduciary status under ERISA is by "being named as the fiduciary in the instrument establishing the employee benefit plan." Jordan v. Fed. Exp. Corp., 116 F.3d 1005, 1014 n.16 (3d Cir. 1997) (citing 29 U.S.C. § 1102(a)(2); quoting Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Secs., Inc., 93 F.3d 1171, 1179 (3d Cir.1996)).[10] "ERISA makes

---

[9] Although the Court draws all reasonable inferences in favor of the Braunstein Beneficiaries as the nonmoving party, it appears that the material facts as reflected in the documents are not really in dispute.

[10] 29 U.S.C. § 1102(a)(2) provides:

(a) Named fiduciaries
. . . .
(2) For purposes of this subchapter, the term "named fiduciary" means a fiduciary who is named in the plan instrument, or who, pursuant to a procedure specified in

clear that a fiduciary is one that maintains discretionary authority or discretionary responsibility in the administration of the plan.  ERISA defines 'administrator' as 'the person specifically so designated by the terms of the instrument under which the plan is operated.'"  Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 234 (3d Cir. 1994) (quoting 29 U.S.C. § 1002(16)(A)(i)).

Weaver Bros. admits that it is a fiduciary pursuant to 29 U.S.C. § 1102(a)(2) because it is named as the Plan Administrator in the Plan.  (Mot. Hr'g Tr. 18:14–19:2, Nov. 16, 2012); see supra note 3.  As Plan Administrator, Weaver Bros. "has the obligation to prepare, issue, amend and file the Summary Plan Description (SPD) and is solely responsible for its contents."  (Id. at 99.)  As discussed infra, the responsibilities of Weaver Bros. regarding the SPD are critical to the dispute here.

### B.  Braunstein Beneficiaries Have Sufficiently Pled That Weaver Bros. Breached Its Fiduciary Duty To Deborah Braunstein

#### 1.  Weaver Bros. Provided An Inadequate Summary Plan Description

Weaver Bros. asserts that as the Plan Administrator, its duties were administrative in nature, and that it had no discretionary authority or control over the plan.  (Mot. Hr'g Tr. 20:9–12, Nov. 16, 2012) (Weaver Bros.' "only fiduciary duty was to administer the plan, to provide copies of the beneficiary forms, to provide a copy of the Summary Plan Description").  Weaver Bros. contends that it was under no duty to notify Deborah Braunstein about her right to convert to an individual plan or about the fact that she was entitled to remain a plan participant for only one year following the end of her "active work" on October 11, 2009.  (Doc. No. 50 at 26.) Weaver Bros. argues that it fulfilled its fiduciary duties to Deborah Braunstein under ERISA by

---

the plan, is identified as a fiduciary (A) by a person who is an employer or employee organization with respect to the plan or (B) by such an employer and such an employee organization acting jointly.

furnishing the SPD to her.  (See Mot. Hr'g Tr. 44:11–13, Nov. 16, 2012) ("[I]t is Weaver's duty to distribute the Summary Plan Description, which they did.").

The Braunstein Beneficiaries do not dispute that Weaver Bros. provided an SPD to Deborah Braunstein, but argue that Weaver Bros. breached its fiduciary duty by failing to provide an adequate SPD as defined in 29 U.S.C. § 1022(a), which provides:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries . . . . The summary plan description shall include the information described in subsection (b) of this section, shall be written <u>in a manner calculated to be understood by the average plan participant</u>, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a) (emphasis added).  Subsection (b) requires, among many other things, a description of "circumstances which may result in disqualification, ineligibility, or denial or loss of benefits . . . ." <u>Id.</u> § 1022(b).

Additionally, the Braunstein Beneficiaries argue that the SPD is deficient under 29 C.F.R. § 2520.102-3(l), which requires an SPD to include:

> [A] statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial, loss, [or] forfeiture . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide on the basis of the description of benefits required by paragraph[] (j) . . . .

Paragraph (j) requires an SPD to include, among other things, "a statement of the conditions pertaining to eligibility to receive benefits." <u>Id.</u> § 2520.102-3(j)(2).

Attached to the Complaint is a copy of the booklet given to a plan participant for Fortis Life Policy number 52,654,[11] which is set forth in the Certificate of Group Insurance.  (Doc. No. 1 at 70–107.)  The SPD is found toward the end of the booklet and apparently runs from pages twenty-four to thirty-two.  (<u>Id.</u> at 99–107.)  At the top of page twenty-four is the heading

---

[11] As stated <u>supra</u> note 5, Deborah Braunstein also had a second Fortis life insurance policy through Weaver Bros.  The other policy is substantially similar to the first one, and the analysis here applies equally to the other policy.

"**SUMMARY PLAN DESCRIPTION**." (Id. at 99.) This is the first time these words appear in

the booklet. Following the paragraph set forth under the heading: "**SUMMARY PLAN**

**DESCRIPTION**" are pages twenty-four through twenty-six, providing general information such

as the name of the plan, the plan sponsor, the employer I.D. number, and the effective date.

Pages twenty-seven and twenty-eight contain a "**STATEMENT OF ERISA RIGHTS**." (Id. at

102–03.) Pages twenty-nine through thirty-two cover "**CLAIMS PROCEDURE**." (Id. at 104–

07.)

 As noted, the words "**SUMMARY PLAN DESCRIPTION**" do not appear until page

twenty-four. Under those words is the following paragraph:

**SUMMARY PLAN DESCRIPTION**

> This Summary Plan Description is issued to you in compliance with the Employee
> Retirement Income Security Act of 1974 (ERISA). Included within this document
> is your Certificate of Insurance, issued by Fortis Benefits Insurance Company in
> compliance with state law. Your Summary Plan Description does not replace or
> modify the Master Policy issued by Fortis Benefits Insurance Company in any
> way. The Master Policy is the contract which sets forth the terms and conditions
> of the benefits the Plan Sponsor chose to provide in its welfare benefit plan. The
> Master Policy may be amended at any time by the Plan Sponsor or may be
> terminated by Fortis Benefits Insurance Company for non-payment of premium or
> for failure to meet the master Policy's minimum participation requirements. The
> plan Administrator has the obligation to prepare, issue, amend and file the
> Summary Plan Description (SPD) and is solely responsible for its contents.

(Id. at 99.)

 This cursory paragraph appears to be the entire SPD, and does not comply with ERISA

because it lacks the basic information that must be given to a plan participant. Even if the

information or sections in the booklet that follows this paragraph is considered to be part of the

SPD, it is still inadequate. Although the SPD refers to the Certificate of Group Insurance by

stating that the Certificate is "[i]ncluded within this document," it is still deficient under 29

U.S.C. § 1022(a) because it does not inform Deborah Braunstein "in a manner calculated to be

understood by the average plan participant" about her right to convert her group Life Insurance Plan to an individual plan. The SPD also violates 29 C.F.R. § 2520.102-3(l) because it does not contain a statement alerting her to the fact that her benefits would terminate one year after ceasing "active work," which is a "circumstance[] which may result in disqualification, ineligibility, or denial, loss, [or] forfeiture . . . of [a] benefit[] that a participant or beneficiary might otherwise reasonably expect the plan to provide . . . ." Because Weaver Bros. provided a deficient SPD to Deborah Braunstein, it violated the fiduciary duty owed to her under ERISA.

**2.    The Certificate Of Group Insurance Is Not Part Of The Summary Plan Description**

Weaver Bros. argues that the Certificate of Group Insurance is part of the SPD. During the hearing on this Motion, counsel for Weaver Bros. stated:

> The fact that [the right to convert to an individual policy] cannot be summarized in a single sentence doesn't mean that it's defective. In order to apprise yourself of your rights under this policy, you have to read the 40 pages that are included, not only the — final pages, but the Certificate of Insurance.
>
> Now, there is no case that says that because it is 40 pages, it is therefore defective, and a plan administrator has breached its fiduciary duty. And indeed, by dismissing [Fortis], the party that drafted it, counsel [for the Braunstein Beneficiaries] has, in effect, admitted it's not defective. . . .
> . . . .
> [I]f you read this, it says that the Summary Plan Description includes the Certificate of Insurance. You have to read it, yes. You have to read 40 pages. That doesn't make it defective. The fact that — you know, because a reasonable — a reasonable person can be asked to read 40 pages. It doesn't mean that it is unclear. It takes some time, but there are multiple provisions in here, and . . . you have to read them. It doesn't mean it has to be done on the back of a — of a Cracker Jack box.

(Mot. Hr'g Tr. 44:17–45:21, Nov. 16, 2012.)

Counsel's arguments are unpersuasive. First, as a preliminary matter, it is true that the standard for adequacy of an SPD is not necessarily the length of the description. The problem here is with the description itself. The paragraph that describes the SPD makes reference to the

Certificate being "[i]ncluded within this document." (Doc. No. 1 at 99.) This statement clearly means that the Certificate of Group Insurance is different from the SPD. Thus, the Certificate of Group Insurance is not part of the SPD.[12]

In Hansen v. Continental Insurance Co., 940 F.2d 971 (5th Cir. 1997), abrogated on other grounds by CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2010), the Fifth Circuit held:

> The certificate of insurance, which sets out the full terms of the policy, is no[t] part of the summary plan description. Continental confounds the *policy* with a *summary* of the policy, collapsing two distinct documents into one. By definition, a summary description of the policy does not reproduce each and every term, word for word, of the policy. Indeed, the very purpose of having a summary description of the policy is to enable the average participant in the plan to understand readily the general features of the policy, precisely so that the average participant need *not* become expert in each and every one of the requirements, provisos, conditions, and qualifications of the policy and its legal terminology.

Id. at 981.

The reasoning of Hansen is persuasive here. There is a clear delineation in the booklet provided to Deborah Braunstein between the Certificate of Group Insurance and the SPD which is found toward the end of the booklet. The table of contents to the Certificate of Group Insurance does not list the SPD. (Doc. No. 1 at 76–77.) The Certificate of Group Insurance is not incorporated into the SPD — it is merely included in "this document," which is the booklet.

Thus, the only way a plan participant would know about the terms of the Plan would be by referring to another document, the Certificate of Group Insurance. The SPD itself, however, is required to provide the summary of the plan, not another document referred to in the SPD.[13]

---

[12] "ERISA requires, in no uncertain terms, that the summary plan description be 'accurate' and 'sufficiently comprehensive to reasonably apprise' plan participants of their rights and obligations under the plan." Burstein v. Ret. Account Plan For Emps. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 379 (3d Cir. 2003) (quoting Hansen v. Cont'l Ins. Co., 940 F.2d 971, 981 (5th Cir. 1997), abrogated on other grounds by CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2010)). "The SPD is the document to which the lay employee is likely to refer in obtaining information about the plan and in making decisions affected by the terms of the plan." Id.

Second, the fact that Fortis drafted the SPD and that the Braunstein Beneficiaries dismissed Fortis as a party to this lawsuit does not lend support to the argument of Weaver Bros. Weaver Bros. is the Plan Administrator. In the SPD quoted above it states the following: "The Plan Administrator has the obligation to prepare, issue, amend and file the Summary Plan Description (SPD) and is solely responsible for its contents." (Doc. No. 1 at 99.) "The plan's administrator, a trustee-like fiduciary, manages the plan, follows its terms in doing so, and provides participants with the summary documents that describe the plan (and modifications) in readily understandable form." CIGNA, 131 S. Ct. at 1877.

As the Plan Administrator cloaked with fiduciary responsibility, Weaver Bros. was responsible for the contents of the deficient SPD. Weaver Bros. was required to make sure that the SPD complied with ERISA. It failed to do so by allowing a deficient SPD to be given to plan participants like Deborah Braunstein in this case.

### 3. The Certificate Of Group Insurance Does Not Clearly And Simply Describe The Conversion Right

Even if the Certificate of Group Insurance is considered to be part of the SPD, it also violates ERISA. In CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), the United States Supreme Court explained "the basic summary plan description objective: clear, simple communication." Id. at 1877. An SPD must clearly and simply communicate the information required by statute and regulation to a plan participant. Although the twenty-three pages comprising the Certificate of Group Insurance describe the terms of the Plan, including the conversion right, the terms are not clear, simple, and "written in a manner calculated to be understood by the average plan

---

[13] The SPD paragraph quoted above is also complicated by the fact that it refers to a "Master Policy." No description is provided about the difference between the Certificate of Group Insurance and the Master Policy. The language of the SPD here is confounding in its wording and omissions and, as noted, does not clearly and simply apprise plan participants of their rights and obligations under the Plan.

participant."  Therefore, even if the Certificate of Group Insurance was part of the SPD, Weaver Bros. breached their fiduciary duty by providing an inadequate SPD.

As noted in the facts set forth above, in order to come to the conclusion asserted by Weaver Bros. that the Braunstein Beneficiaries are entitled to no benefits, a review of the language in the Certificate of Group Insurance for Policy Number 52,654 is required.  The analysis begins on pages 3 and 4, the **GENERAL DEFINITIONS** section, which defines approximately seventeen different terms that are used throughout the Certificate, which is over twenty pages long.  Next, after skipping to page 6, there is a section entitled **ELIGIBILITY AND TERMINATION PROVISIONS FOR YOU**.  This section describes "**When Your Insurance Ends**" by making reference to terms listed in the **GENERAL DEFINITIONS** section.  This section states that insurance ends on the date "you stop *active work*."  (Doc. No. 1 at 81 (emphasis in original).)  However, this is subject to an exception if a person stops "active work" due to a disability — the **DISABILITY BENEFIT** — although this exception is not explained on page 6 or cross-referenced.

The **DISABILITY BENEFIT** section is explained on page 7 and is subject to a limitation defined in the "**Maximum Benefit Period**" provision.  That provision is on page 8. Both the **DISABILITY BENEFIT** and the **Maximum Benefit Period** are explained using terms defined in the **GENERAL DEFINITIONS** section on pages 3 and 4.  There is a different **Maximum Benefit Period** depending on whether a participant becomes disabled before or after their 60th birthday.

Once the **Maximum Benefit Period** ends, group life insurance benefits also end.  Under the **Conversion to an Individual Policy** provision, which is on page 9, this would allow a participant to convert their group policy to an individual policy and continue benefits.  This right

is not explained on page 7 or 8, and there is no cross-reference to page 9. The **Conversion to an Individual Policy** section is the key provision in this dispute.

This seeming explanation of rights, benefits, or even obligations of the plan participant is not clear or simple. The critical provision dealing with conversion rights requires an analysis of several steps over many pages. For Deborah Braunstein, who was diagnosed with a cancer that disabled her and eventually caused her death, this conversion right was imperative for her to understand. As previously noted, although an attorney or someone working with the Certificate on a frequent basis may be able to understand its convoluted terms, the average plan participant would not comprehend their rights, benefits, and obligations as written in the Certificate.

### 4. Weaver Bros. Made Material Misrepresentations To Deborah Braunstein

Weaver Bros. also breached its fiduciary duty to Deborah Braunstein by engaging in misleading statements and actions that she relied upon to her detriment. These misrepresentations exacerbate Weaver Bros.' breach of its duty to provide an adequate SPD to her. The Braunstein Beneficiaries allege that Deborah Braunstein:

> had conversations with Weaver [Bros.] about her benefits under the Life Insurance Plan while she was out on short term disability. . . . Deborah Braunstein . . . inquired as to whether Weaver Bros. would maintain her life insurance benefits as an active employee while she was out on short term disability. Weaver [Bros.], as the Life Insurance Plan Administrator, informed her that her benefits under the Life Insurance Plan would be maintained as an active employee.

(Doc. No. 44 at 10.) This allegation is supported by a letter that Weaver Bros. sent to Fortis after Deborah Braunstein's death, which stated the following:

> [W]e promised Deborah Braunstein that we would continue her benefits through our organization just like we do for all active employees. It was always Deborah Braunstein's desire to return to work as soon as she could. It would have been insensitive, irresponsible and inappropriate to discontinue her benefits through our company. Up until Deborah Braunstein's death, we continued to treat her as an employee and this included paying for her health and life insurance as well.

(Id. at 11 (emphasis omitted).)  Weaver Bros. has acknowledged this letter, and admits it was "mistaken in paying the premiums for [Deborah Braunstein's] life insurance."  (Doc. No. 57 at 7.)

Weaver Bros. also faxed to Deborah Braunstein a blank beneficiary designation form, and requested that she update her beneficiaries.  No mention was made of the conversion requirement at this point.  When Deborah Braunstein requested that Weaver Bros. "look [the forms] over to make sure [she] included the necessary information," Weaver Bros. did not inform her that her policy would lapse on October 10, 2010, despite knowing about her disabling cancer.

Weaver Bros. contends that it was under no duty to inform Deborah Braunstein of her conversion right and cites Jordan v. Federal Express Corp., 116 F.3d 1005 (3d Cir. 1997), where the Third Circuit stated: "We recognize that participants have a duty to inform themselves of the details provided in their plans . . . ."  Id. at 1016.  The Jordan decision illustrates, however, that it is in fact similar to this case, and actually holds that plan administrators, in certain circumstances, are under a fiduciary obligation to inform plan participants about material information that could affect their benefits.

In Jordan, an airline pilot on long-term sick leave received a letter from his employer advising him that after his sick leave was exhausted, he could be eligible for a disability benefit. After applying for the disability benefit by filing the necessary paperwork, the pilot's employer advised him in a letter of his projected disability benefits under three annuity benefit plans from which he could choose.  The letter failed to mention that the plans prohibited post-retirement changes to the designation of a joint beneficiary, although he was free to make changes to his designation before retirement.  After the pilot retired, he divorced his wife and remarried.  His

employer refused to add his new wife as a joint beneficiary to his annuity plan because the beneficiary designations he had made became irrevocable after he retired.

The Third Circuit in Jordan noted that the pilot had prior experience with changing his retirement benefits. Although the plan administrator failed to inform him of the irrevocability of his beneficiary designation in the letter, because of his prior experience, an issue of fact existed as to whether the administrator's failure to notify him of the irrevocability of his benefits post-retirement constituted a breach of fiduciary duty, despite the pilot's failure to inquire about his rights and benefits.

The sentence from Jordan cited by Weaver Bros., when read in context, illustrates the court's reasoning:

> We recognize that participants have a duty to inform themselves of the details provided in their plans, and that the irrevocability restriction was contained in Jordan's plans. But it is uncontested that Jordan did not receive copies of the plans or their Summary Plan Descriptions before his election. We also recognize that Jordan never requested information on irrevocability. . . .

> But in prior cases, we have held a specific request for information is not necessarily a prerequisite for finding a fiduciary breach to inform. As we held in Glaziers, "it is clear that circumstances known to the fiduciary can give rise to this affirmative obligation [to inform] even absent a request by the beneficiary." Moreover, in Bixler we held that "while the beneficiary may, at times, bear a burden of informing the fiduciary of her material circumstance, the fiduciary's obligations will not be excused merely because she failed to comprehend or ask about a technical aspect of the plan." Here, we do not believe Jordan's failure to inquire is fatal to his claim.

Id. at 1016 (internal citations omitted). Similar to the situation faced by Deborah Braunstein here, the pilot was unable to make an informed choice about his benefits because he did not have an adequately descriptive SPD. In addition, like Weaver Bros. here, the pilot's employer was aware of a material circumstance that created an affirmative duty to inform.

Under ERISA, "the duty to disclose material information 'is the core of a fiduciary's responsibility.'" Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d

Cir. 1993) (quoting <u>Eddy v. Colonial Life Ins. Co. of Am.</u>, 919 F.2d 747, 750 (D.C. Cir. 1990)). "[W]hen a plan administrator affirmatively misrepresents the terms of a plan or fails to provide information when it knows that its failure to do so might cause harm, the plan administrator has breached its fiduciary duty to individual plan participants and beneficiaries." <u>In re Unisys Corp. Retiree Med. Ben. ERISA Litig.</u>, 57 F.3d 1255, 1264 (3d Cir. 1995). "[A] misrepresentation is material if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed retirement decision." <u>Id.</u>

In <u>Unisys</u>, the court noted: "Unisys affirmatively and systematically represented to its employees that once they retired, their medical benefits would continue for life — even though . . . the plans clearly permitted the company to terminate benefits." <u>Id.</u> at 1264. The Third Circuit held that this conduct "constitute[d] a breach of fiduciary duty in its most basic form." <u>Id.</u>

In <u>Estate of Gore v. Crozer Chester Medical Center</u>, No. 96-8192, 1997 WL 570906 (E.D. Pa. Sept. 5, 1997), an employee at retirement age was diagnosed with large-cell lymphoma. The defendant employer, who had knowledge of the employee's serious illness, remained silent about a provision in the employee's pension plan that precluded retirement benefits if the employee died prior to retirement. The employee unwittingly elected to remain employed and collect long-term disability benefits. As a result, she did not receive any of her pension benefits upon her death. The employee's estate sued the employer.

The court held "that a genuine issue of material fact exists as to whether defendant knew of Ms. Gore['s] terminal illness and if so, whether its silence in the face of this knowledge constituted a breach of fiduciary duty." The court further stated:

> Under Third Circuit precedent, a fiduciary is not only under a "negative duty not to misinform, but also [under] an affirmative duty to inform when the Trustee

knows that silence might be harmful." "[T]he fiduciary has an obligation to convey complete and accurate information material to the beneficiary's circumstance. This is so even if that information comprises elements about which the beneficiary has not specifically inquired."

Id. at *5 (quoting Bixler, 12 F.3d at 1300 (internal citation omitted). The employer in Gore argued that Bixler was distinguishable because the employee in Gore did not inquire about her benefits, unlike the employee in Bixler. The court held:

[I]n [Jordan v. Federal Express Corp.] the plaintiff plan participant did not make inquiry about his benefits either. Nevertheless the Court found that an issue of fact existed as to whether the employer's failure to inform the plaintiff of the irrevocability of his retirement selection constituted a material omission and a breach of its fiduciary duty.

Id. at *5.

Jordan, Bixler, Unisys, and Gore illustrate that ERISA forbids a fiduciary from misleading or making material omissions to a plan participant or beneficiary.[14] Here, based on the factual allegations contained in the pleadings and the incorporated attachments, Weaver Bros. breached its fiduciary duty to Deborah Braunstein by actively misleading her about Plan terms and by failing to inform Deborah Braunstein of her conversion rights when the company knew that Deborah Braunstein was severely ill.

The Braunstein Beneficiaries allege that Deborah Braunstein inquired about her life insurance benefits after she began collecting short-term disability payments and was told by Weaver Bros. that her life insurance would be maintained as an active employee. (Doc. No. 44 at 10.) This was misleading because according to the terms of the Plan, Deborah Braunstein was not an active employee after October 11, 2009.

---

[14] Although the procedural posture of Jordan, Bixler, Unisys, and Gore was at the summary judgment stage, in which the standard of review is different from the one applied to a motion for judgment on the pleadings, these cases are instructive on the ERISA claims at issue here.

Weaver Bros. further misled Deborah Braunstein by faxing her a beneficiary designation form and informing her that the company "was updating the beneficiary designations for all employees' life insurance plans." Deborah Braunstein faxed back the form and asked Weaver Bros. to "look [the form] over to make sure [she] included the necessary information." Weaver Bros. did not inform Deborah Braunstein that she needed to take any additional action. This inaction led Deborah Braunstein to believe that her life insurance benefits were effective and that no other action on her part was necessary to activate coverage.

Moreover, Weaver Bros. was aware that Deborah Braunstein became disabled due to cancer and was severely ill. In light of this fact, which is aggravated by Weaver Bros.' misleading communications to Deborah Braunstein, Weaver Bros.' silence about her conversion rights when her Plan benefits ended on October 10, 2010 was a material omission. Weaver Bros. was under a fiduciary obligation to inform Deborah Braunstein that her benefits ended on that date and to notify her of her right to convert her group policy to an individual policy within thirty-one days. The allegations in the pleadings and attachments support the inference that Deborah Braunstein would have exercised the conversion right if she had knowledge of it given her severe illness — it was only three months after her benefits lapsed that Deborah Braunstein succumbed to cancer. The only reason she did not exercise the right is because Weaver Bros., the Plan Administrator, led her to believe that her life insurance benefits were in full force, as though she was an active employee.

Weaver Bros. argues that Bicknell v. Lockheed Martin Benefits Plan, 410 F. App'x 570 (3d Cir. 2011), applies here and forecloses the Braunstein Beneficiaries' claims. In Bicknell, the plaintiff attempted to enroll his son in a life insurance plan online. The online enrollment form did not require the plaintiff to enter his son's date of birth. Shortly after the enrollment, the

plaintiff's son died in a car accident. When the plaintiff requested benefits under the life insurance plan, the request was denied because his son was too old for coverage. Similar to the instant case, the plaintiff could have converted his son's policy to an individual policy and maintained coverage. The plaintiff argued that the defendant failed to provide him with notice of the conversion option.

The Third Circuit held that "the plan documents themselves, which alerted Bicknell to the fact that he needed to apply to convert coverage within a limited period of time after his dependent became ineligible, were the only notice required by the statute." Id. at 575. "[T]hose plan documents make clear that under no circumstances can an employee convert dependent coverage to an individual plan more than ninety-one days after the dependent becomes ineligible as such." Id. (emphasis in original). Weaver Bros. argues that under the reasoning of Bicknell, Deborah Braunstein had a duty to inform herself of the conversion option, and Weaver Bros. was under no obligation to notify her of her rights.

Bicknell is distinguishable. In Bicknell, the plaintiff alleged that employees of the defendant misled him by stating, "so long as he was able to enroll a dependent online, the dependent was eligible for coverage." Bicknell, 410 F. App'x at 576 n.5. Despite this representation, the court in Bicknell found that the plaintiff was on notice of the terms of the plan because the online system clearly communicated the terms to the plaintiff, and any alleged statements by defendant's employees could not modify or supersede the terms. Id.

The plaintiff in Bicknell attempted to enroll his son in a life insurance plan via an online system that conspicuously stated: "Claims will only be paid for dependents you have enrolled who meet the eligibility requirements for those plans. You are responsible for maintaining accurate information on the eligible dependents you want to cover." Id. at 573. A similar clear,

simple statement was not communicated to Deborah Braunstein in the instant case, where Weaver Bros. failed to provide her with notice of the conversion option in the SPD as required under ERISA, and communicated misleading information to her. Here, Deborah Braunstein was not clearly alerted either by Weaver Bros. or the plan documents of the need to convert.

In sum, Weaver Bros. breached its fiduciary duty by communicating materially misleading information to, and withholding material information from, Deborah Braunstein that she relied upon to her detriment.

### C. Braunstein Beneficiaries May Seek "Appropriate Equitable Relief" Under 29 U.S.C. § 1132(a)(3)(B)

Weaver Bros. contends that the money damages sought by the Braunstein Beneficiaries are inappropriate because ERISA only allows for equitable relief. In response, the Braunstein Beneficiaries argue that the U.S. Supreme Court held in CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011), that the type of relief sought by the Braunstein Beneficiaries here is a permissible under 29 U.S.C. § 1132(a)(3) because it is "appropriate equitable relief." See, e.g., Templin v. Independence Blue Cross, 487 F. App'x 6, 12 n.9 (3d Cir. 2012). The Court agrees that CIGNA permits the Braunstein Beneficiaries' claim for relief.

Section 1132(a)(3) is a "catchall" provision "act[ing] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." Varity Corp. v. Howe, 516 U.S. 489, 512 (1996). Section 1132(a)(3) provides:

> (a) Persons empowered to bring a civil action
> A civil action may be brought —
> . . . .
> (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan . . . .

ERISA is rooted in trust law principles.  See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110–11 (1989).  Under ERISA, plan fiduciaries are treated as trustees, and the terms of the plan are treated as a trust.  CIGNA, 131 S. Ct. at 1879.  "Only traditional equitable remedies" are available in awarding relief under § 1132(a)(3).  Leckley v. Stefano, 501 F.3d 212, 230 (3d Cir. 2007) (citing Mertens v. Hewitt Assocs., 508 U.S. 248, 256 (1993); Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209–10 (2002)).

In CIGNA, the district court awarded monetary compensation for the defendant's breach of fiduciary duty.  Petitioners challenged the award of monetary compensation as an unavailable form of relief under ERISA.  The Court held:

> Equity courts [traditionally] possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment.  Indeed, prior to the merger of law and equity this kind of monetary remedy against a trustee, sometimes called a "surcharge," was "exclusively equitable."
>
> The surcharge remedy extended to a breach of trust committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary.  Thus, insofar as an award of make-whole relief is concerned, the fact that the defendant in this case . . . is analogous to a trustee makes a critical difference.  In sum . . . the types of remedies the court entered here fall within the scope of the term "appropriate equitable relief" in [§ 1132(a)(3)].

CIGNA, 131 S. Ct. at 1880 (internal citations omitted).

Here, Weaver Bros. is a fiduciary, and is therefore treated like a trustee under ERISA.  As discussed in CIGNA, this Court is empowered to award monetary compensation analogous to the historical relief of "surcharge" to the Braunstein Beneficiaries for Weaver Bros.' breach of fiduciary duty.  Weaver Bros. acknowledges CIGNA, and argues that this case does not satisfy the "requirements . . . from the law of equity," without any elaboration.  (Doc. No. 69 at 5 (citing

CIGNA, 131 S. Ct. at 1878).)  Accordingly, Weaver Bros. as a fiduciary can be held accountable for monetary damages as a "surcharge" under the provisions of 29 U.S.C. § 1132(a)(3)(B).[15]

### D.    Braunstein Beneficiaries Are Entitled To Relief In Their Individual Capacities

Weaver Bros. also contends that the Braunstein Beneficiaries cannot seek individual relief under 29 U.S.C. § 1132(a)(3), and that an action for breach of fiduciary duty may only be brought on behalf of a plan.  Weaver Bros. relies, however, on a number of cases that discuss the unavailability of individual relief under § 1132(a)(2).  (Doc. No. 50 at 34–35.)  As discussed above, the Braunstein Beneficiaries are proceeding under § 1132(a)(3)(B), which provides that "[a] civil action may be brought . . . by a beneficiary . . . to obtain other appropriate equitable relief . . . ."  The cases cited by Weaver Bros. discussing the availability of relief under § 1132(a)(2) are inapposite to the present case.

In Varity, the United States Supreme Court held that "[t]he words of [§ 1132(a)(3)] — 'appropriate equitable relief' to 'redress' any 'act or practice which violates any provision of this title' — are broad enough to cover individual relief for breach of a fiduciary obligation."  Varity, 516 U.S. at 510.  Furthermore, § 1104(a) "requires fiduciaries to discharge their duties 'solely in the interest of the participants and beneficiaries.'  Given these objectives, it is hard to imagine why Congress would want to immunize breaches of fiduciary obligation that harm individuals by denying injured beneficiaries a remedy."  Varity, 516 U.S. at 513; see Bixler v. Cent. Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1299–1300 (3d Cir. 1993).  Consequently, the Braunstein Beneficiaries are entitled to relief in their individual capacities.

---

[15] In its moving brief, Weaver Bros. argued that a Fourth Circuit case, McCravy v. Metropolitan Life Insurance Co., 650 F.3d 414 (4th Cir. 2011) ("McCravy I"), was "identical" to this case. (Doc. No. 50 at 30.)  McCravy I held that a claim under a surcharge theory was legal, not equitable in nature, and it was therefore not permitted under 29 U.S.C. § 1132(a)(3)(B). McCravy I was decided May 16, 2011, the same day CIGNA was decided.  On July 5, 2012, the Fourth Circuit held a panel rehearing and reversed McCravy I in view of CIGNA.  McCravy v. Met. Life. Ins. Co., 650 F.3d 176 (4th Cir. 2012) ("McCravy II").

### E. Negligence Claim Is Preempted

The Braunstein Beneficiaries also bring a claim for negligence against Weaver Bros. Weaver Bros. argues that the negligence claim is preempted by 29 U.S.C. § 1144(a) (ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."). The Braunstein Beneficiaries concede that if Weaver Bros. acted as a fiduciary with respect to Deborah Braunstein under ERISA, the negligence claim is preempted. (Doc. No. 53 at 30; Doc. No. 75.) Because the Court has determined that Weaver Bros. was a fiduciary, the negligence claim is preempted. Judgment will be entered in favor of Weaver Bros. on the negligence claim only.

## V. CONCLUSION

Weaver Bros. breached its fiduciary duty to Deborah Braunstein when it (1) failed to provide a SPD to Deborah Braunstein that clearly communicated vital information about a plan provision that could lead to the termination of benefits — namely, her right to convert to an individual policy; and (2) misled Deborah Braunstein by informing her that she was covered by the Fortis life insurance policies during her period of disability, without mentioning that her policy would lapse one year after she ceased "active work." For the forgoing reasons, the Court will grant in part and deny in part Weaver Bros.' Motion for Judgment on the Pleadings.

An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WEAVER BROS. INSURANCE
ASSOCIATES, INC.,

              Plaintiff,

    v.

JACQUELINE BRAUNSTEIN, et al.,

              Defendants.

CIVIL ACTION
NO. 11-5407

## <u>ORDER</u>

**AND NOW**, this 25th day of March 2013, upon consideration of Weaver Bros.' Second

Motion for Judgment on the Pleadings (Doc. No. 50), the Braunstein Beneficiaries' Response in

Opposition (Doc. No. 53), Weaver Bros.' Reply in Further Support (Doc. No. 57), the Braunstein

Beneficiaries' Notice of Supplemental Authority (Doc. No. 58), the Braunstein Beneficiaries'

Second Notice of Supplemental Authority (Doc. No. 65), Weaver Bros.' Memorandum of Law in

Response to the Braunstein Beneficiaries' Notices of Supplemental Authority (Doc. No. 69), the

Braunstein Beneficiaries' Response in Support of the Notices of Supplemental Authority (Doc.

No. 72), the arguments of counsel at the November 16, 2012 hearing, Weaver Bros.' letter dated

December 7, 2012 (Doc. No. 78), and the Braunstein Beneficiaries' letter dated December 10,

2012 (Doc. No. 75), and in accordance with the Opinion of the Court issued this day, it is

**ORDERED** as follows:

    1.      Weaver Bros.' Motion for Judgment on the Pleadings (Doc. No. 50) is

              **GRANTED IN PART AND DENIED IN PART**.

2.      Judgment is entered in favor of Weaver Bros. and against the Braunstein

        Beneficiaries **only** on Count II (Negligence) of the Braunstein Beneficiaries'

        Counterclaim.

3.      The parties shall file a joint letter advising the Court of the status of this lawsuit,

        along with a revised Rule 26(f) report, within fourteen (14) days of this Order.

4.      A pretrial conference will be held on April 12, 2013 at 10:30 a.m. in Chambers,

        United States Courthouse, 601 Market Street, Room 5614, Philadelphia

        Pennsylvania, at which time a scheduling order will be entered.


                                        BY THE COURT:


                                        /s/ Joel H. Slomsky
                                        JOEL H. SLOMSKY, J.